And, Your Honor, if I would like to reserve two minutes of this time for co-counsel, Ms. Jenny Tsai, to address any other matters. Okay, well, you've got ten to do. However you do want to do it, you do it. Thank you, Your Honor. Good morning. May it please the Court, my name is Roger Green, and I am counsel for petitioner. On this petition for review, we seek review by this Court from what we believe are numerous errors in the BIA's denial decision in 2009. Perhaps in this denial decision, they failed to meaningfully analyze petitioner's claim. First, in 2009, the legal landscape was different than it is today, and I'm talking specifically about on the membership grounds. Since 2009, this Court has addressed membership in Enriquez-Rivas. It's also addressed membership in Perea. Counsel, if we agree with you that the membership in a particular social group is established here, if we agree with you, could you speak to what evidence supports the other part of the test, which is, you know, persecution on account of? Yes, Your Honor. On the account of basis, I first want to note that this standard, the BIA is correct, and they note in a footnote, that this solemn application was filed in 1993. In 1993, that was before the Real ID Act, and therefore, the parsim of standard of central reason is not in this case. It's at least in part of standard. That's as a threshold when this Court is looking at the account of basis. Now, on the on account of basis, I think it's very important that it's our position that the BIA did not recognize that, as Elias Zacharias would say, when you can't show direct motivation of the persecutor, you've got to look at circumstantial evidence, and the BIA failed to look at all of the circumstances, or if they did, they didn't look at them in the proper nuances. Did the guerrillas make any statements relating to your client's or his father's political views? Did they make any statements concerning or relating to your client's or his father's political views? That's a yes or no question. Not in the testimony. There isn't any. Did they make any statement in regard to their own political views? Not in the testimony. All right. There is only in this record, as I see it, evidence that the guerrillas were trying to find where your client's father was. Would you agree? Yes, Your Honor. So if that's the best evidence I have, that they were trying to find out where your client's father was, how do I meet the on account of? We would look, because we do not have that, as Elias Zacharias would note, we don't have a direct correlation, but we can look at the circumstantial evidence. So what's the circumstantial evidence in this case that helps us see this link, because this is vital? Thank you, Your Honor. The circumstantial evidence is at the time the guerrillas came to the house, it was in the midst of the Civil War. Petitioner's father was a Civil Patrol boss, and the immigration judge notes in his findings of fact what the Civil Patrol does as a paramilitary organization, and Petitioner also notes in his testimony what one of the missions of the Civil Patrol was. One of the missions of the Civil Patrol was to protect the family against the guerrillas. Now, the other thing is, I guess my worry is if that's the best, that's the best, and I want you to tell all that you have, but I'm not the finder here. I can't make my determination, even if I would like to help your client. What I have to do is say, is there substantial evidence to sustain what happened in the court below? In my book, or at least in my questioning so that I can help you understand, substantial evidence isn't very much evidence, but that has to be something that will sustain the lower court's decision, and that's why I ask you the questions. It seems to me there's nothing to suggest that the guerrillas had anything to do with your client or his father's political views. There's nothing to suggest that they made any statement about even what their political views were. All I know is they wanted to know where your client's father was. Why is that not substantial evidence to sustain the decision? Well, we believe in the midst of the Civil War, this act, given that one of the missions of the Civil Patrol was to defend the family, when the guerrillas are going to the Civil Patrol boss's house looking for him, this is not a friendly visit, Your Honor. This is a home invasion in the worst way. This is, in this sense, Your Honor, if you look at, in another Civil War, an earlier, a better lawyer than myself once said, a house divided cannot stand. In this manner, this family is seen to be together. They're seen to be united. And the guerrillas see them as part of the Petitioner's father. They see the family aligns themselves with the father, whether or not they say anything. But, counsel, if I agree with that, and that's being part of a particular social group, so my given is that I agree with that for purposes of this hypothetical. And I'm looking at page 147 in the record that your client testified that his father did not mention any problem with the guerrillas. So even if the guerrillas see the family as aligned with the father, I don't see the link where the father had this political problem or dispute with the guerrillas. That's the evidence I think Judge Smith is asking you to focus on, the link that we need. In that manner, we are relying upon what even the immigration judge recognized, what the Civil Patrol's purpose was, what its central mission was. But if I have conflicting evidence, you don't win. Substantial evidence is all that's needed to sustain the BIA decision. That's why I'm trying to get you to suggest that it can't be substantial. I laid out what they're saying it is, and I want you to give me a basis to say that this can't be something they can rely on. Well, if I can refer to a case that it is not, and the government provided this court in their 28-J letter, they refer to a case, Garcia Millon. In that case, the petitioner was denied. And that case was denied based on facts that are not in this case. For one thing, when at the time of those mass visitors, that was 14 years after she had last seen the alleged person who was in guerrilla involvement. This one, this was happening right at that time. The other thing in Garcia Millon was that it was never established who these mass visitors were. In this case, these are guerrillas. There's no dispute. During the Civil War. The other. If I turn now, then we've talked kind of about the asylum. If, in fact, one can't show the past persecution, don't you think it would be pretty tough to go on and suggest there was an eligibility for withholding? Don't you think we've really nubbed the biggest point you can make? Because if it fails on asylum, withholding, it also fails. Would you agree? It would make it somewhat more difficult. How about CAT? Is there anything in the record that would suggest that it is more likely or not that your client would be tortured? Well, it's of note that in the immigration judge's decision at the time these events were happening, he described it as torture. He had been tortured at that time. Now, in his testimony regarding Guatemala at the present time, at the time of the hearing, he also describes his fears of return. And that's what we'd be relying on for CAT. If I can just make a few more notes. Actually, I'm almost out of time. I'd like to reserve this for co-counsel. Well, you've got 21 seconds for her, or do you just want to sum up? Well, if I can summarize, Your Honor, I believe that this case has met its burden for the requirements. I believe the substantial evidence test was met. I believe alternatively, given the changes of the legal landscape at the time, that this case can be remanded for an evidentiary findings regarding both the protected grounds as well as the on-account of basis. Thank you, Your Honor. Thank you. Appreciate your argument. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. What the Court has before today is a straightforward failure by Petitioner to meet his burden of proof on the on-account of requirement. Petitioner offered only his sparse testimony, offering very few details and essentially conceding that he did not really know the guerrilla's motivations. While Petitioner has attempted to focus the Court on the cognizability of the particular social group, the Court need not reach that issue because of the dispositive determination about the failure to present evidence of the on-account of requirement. How do you distinguish this case, or what is the response to opposing counsel's attempt to distinguish this case from Garcia-Millan? There is no distinction, Your Honor. What's sort of interesting is sort of there's a difference. There was 14 years in that case since the woman had seen her common-law husband, a very significant period of time. And the intruders in that case weren't identified. But here, it does seem to be uncontested that they were guerrillas. So that's his position. Could you respond? Again, but, Your Honor, the – essentially, there is no meaningful distinction. What Petitioner's – Isn't there stronger circumstantial evidence in this case? No, Your Honor. There essentially is no circumstantial of the – circumstantial evidence of the guerrillas being motivated by the political opinion, imputed political opinion, or any sort of particular social group. Well, what he says is that we're supposed to look at the circumstantial evidence. And the circumstantial evidence is that these folks were guerrillas, there was a civil war going on, and the father was in the community patrol, the civil patrol. So what is the closest case law we should look to to decide whether or not – you know, to gauge whether that circumstantial evidence is sufficient? Well, Garcia-Millan and Kozolan are both particularly pertinent here. Kozolan talks about you must have something merely beyond just a disparity of views. So if you have, say, a Republican fighting a Democrat, you don't just assume, well, they have to be fighting about a political opinion. Or, more importantly, the record does not compel the conclusion that they are fighting because of a political dispute merely because they may disagree. What we need is actual evidence, circumstantial, direct, something. But Petitioner testified for ten pages. Compare that to the cancellation application, where he had presented testimony, the daughter's testimony, documents, he presented statements from family and friends. The asylum application is essentially an afterthought. Is there any indication about the – Opposing Counsel talks about the – one of the missions of the civil patrol. And I think he's right about one of the missions of the civil patrol, but it struck me as a broader mission or maybe a more ill-defined mission. And that seems to me to be significant, because I think that the son, the Petitioner here, testified that his father never said anything about having particular conflicts with the guerrillas. Well, Your Honor, that is sort of the problem, that he essentially, when he's ever Petitioner's asked, why is this going on, at the very beginning he's asked why is this going on generally, I don't know. When he's asked specifically why this one incident, why the guerrillas were there threatening him, he says, I don't know if they said anything. And then when it comes up later about – I think that particular comment is particularly directed to currently. To, excuse me, to what? To current conditions. Petitioner's being asked by counsel what's currently going on. And – So at the time of the hearing, he was asked what was currently going on at home, is that right?  Okay. Which I believe was in 2006, 2007. Which at that point, obviously, the Civil War had been over for 20 years. And Petitioner is talking primarily about what's going on then, at the time. And he's saying, well, my dad hasn't mentioned anything about the guerrillas. Now, of course, pressed later, he says, oh, well, the guerrillas are now gang members. Even if we believe that – Well, you don't have any reason not to believe it, do you? Because there's no finding that he's not credible. You know, that's the difficulty with adverse credibility terminations. No, there's no finding he's not credible. Well, so we presume that he was, right? As a matter of law, we presume that he was. We presume that he was. Okay. The difficulty is when someone says two contradictory things, does that compel a conclusion that the guerrillas are now gang members? That's difficult to say when, again, as Judge Smith points out, when you have contradictory evidence, the record does not compel a conclusion. So Petitioner then is focused heavily on general civil strife. Well, this is a civil war. Except this Court has consistently recognized that general civil strife just isn't enough. Isn't that kind of a blasé view of guerrillas showing up armed at your house and threatening you? You know, it's not to suggest that this is an unfortunate and terrible incident. But being terrible, being – it could have been much worse. Someone could have been killed. But what an asylum applicant must show is that those guerrillas are motivated by protected ground. And when you present ten pages of sparse testimony where you don't know why the guerrillas – But what contrary testimony is there? As I say, you have to take his as credible. So there you have it. Well, but he has the burden of proof, Your Honor. So the government doesn't have to present any testimony or any evidence. Well, this is one of these unique cases where the substantial evidence to support the agency's determination is the complete lack of evidence. Sometimes I think it's easier in cases like this to switch the sort of – Well, it might be thin, but there isn't other evidence. It's absolutely almost nonexistent, Your Honor. Then there does not need to be other evidence. When someone has the burden of proof, the other party doesn't have to come forward with essentially anything. Okay. So you've got guerrillas coming to the place. The father is engaged in some political activity. You're part of the family group. And what's the contrary evidence? And that's some evidence to support the petitioner's position, it seems. Well, what the record would have to do is compel the conclusion, compel the inference that merely because the father is involved with the Civil Patrol, that A, he has a political opinion, or that the guerrillas impute some political opinion. We just need evidence of that. We need something beyond essentially argument of counsel saying, well, that's what it is. Well, we need evidence. The guerrillas just happened to show up with guns and threaten you? Well, I think when we look at the very beginning of Petitioner's testimony, he's asked, well, why is this going on? He said, well, the guerrillas were looking for food. And undeniably, this is a civil war. But the Court has consistently said, merely because people experience bad things in civil wars doesn't mean that's on a counterprotective ground. If we accept that sort of low-level requirement, essentially every person from every Latin American country over the last 30 years would have had asylum. Because everyone suffered during those civil wars. Well, not everybody has guerrillas showing up at their door with armed and threatening them and wanting to find out where their father is who's involved in the Civil Patrol as a leader. Well, that's the difficulty, Your Honor. We don't know that's why they were looking. For all we know, the guerrillas could have been looking for the dad because of the gambling debt. He could have been looking for them because of a personal dispute. We just don't know. Again, when he's asked, very specifically, did they tell you why they were doing this? He says, I don't know whether they said anything or not. We just don't have evidence. And without evidence, the record can't compel reversal of the agency's determination. Other arguments you'd make, Counsel? Well, I'd just like to touch briefly, Your Honor, on the particular social group. As expressed in Article 28J, it has been five years since the agency decision. The Court and the agency have issued at this point, I believe, five published decisions addressing this. But the Court need not reach the issue because it does have the dispositive on account of determination before it. And we'd ask the Court to deny the petition for review. Thank you. Thank you very much. Any more questions? Nothing. Thank you. No. Thank you. All right. Thank you. Then, Case, he did lose all your time. I'll give you 30 seconds. I mean, he said you were the great sum-up that he wanted to have come up. So I'll give you 30 seconds. I'll get to the point. Okay. So I just want to point out that the petitioner did meet his burden of proof and that the judge did find petitioner mostly credible in this case. And that during this wartime, we can presume that when the opposition is going to your house, that they're not here to party. They're here to do harm, especially that petitioner did suffer harm when he did not give out the information. And I think this compels the Court to find that there has been an imputed political opinion on the petitioner based upon the activities of the father. Could I ask you, forgive me, but you said the opposition. If the opposition comes to your house, could you just give me the site for the record where I can see that this was really an opposing political view from that of the father? I believe that the judge took notice that this was a guerrilla group and that the father was a civil patrol boss. And just ‑‑ I can brief on this, but just in the general civil war environment, it was the guerrillas against the civil ‑‑ The record citation would be helpful. There are five different hearings, 400 pages. Well, let's not wait for that. If you want to give that ‑‑ I could brief on that. But I also wanted to point out that during this worst incident at petitioner's house, he was 17 or ‑‑ I'll be fair. I gave you 30 seconds. He went over. And I didn't have to give the government all the time. I think your time is finished. Thank you very much. Thank you so much. Case 09‑72496 is submitted. We'll now move to case 15656, Azzam versus Hill.
judges: Piersol, SMITH, CHRISTEN